UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUSAN B. LONG, *et al.*, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Case No. 15-cv-1734 (TSC) |
| CENTRAL INTELLIGENCE AGENCY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

In this Freedom of Information Act ("FOIA") lawsuit, Plaintiffs Susan B. Long and David Burnham, co-directors of a research center, seek information and records about how the Central Intelligence Agency ("CIA") processes FOIA requests. The CIA has declined to process certain portions of Plaintiffs' requests and agreed to process others. The parties have cross-moved for partial summary judgment with respect to the items the CIA declined to process, and the CIA has filed an uncontested second motion for partial summary judgment with respect to the items it agreed to process.

For the reasons set forth below, the court will GRANT in part and DENY without prejudice in part both cross-motions for summary judgment, and will GRANT the CIA's uncontested second motion for partial summary judgment.

I.  BACKGROUND

Plaintiffs are the co-directors of the Transactional Records Access Clearinghouse ("TRAC"), a research center "dedicated to making the actual working of the federal government more readily accessible to the public." Long Decl. ¶ 2, ECF No. 19-1.

1

### A. Processing Data Requests

On January 23, 2015, Plaintiffs submitted a FOIA, 5 U.S.C. § 552 *et seq.*, request to the CIA, seeking "a case-by-case listing of all FOIA requests received by the FOIA office from October 1, 2012 – December 31, 2014 with the following data fields: (a) Assigned request tracking number; (b) Office (where multiple components); (c) Date of request; (d) Date request was received; (e) Track assigned (where used); [and] (f) Date closed (where closure has occurred)." ECF No. 16-2, Ex. A. On February 20, 2015, the CIA responded, declining to process Plaintiffs' request because its "record systems are not configured in a way that would allow [it] to perform a search reasonably calculated to lead to responsive records without an unreasonable effort." *Id.* Ex. B. It offered to provide Plaintiffs with "FOIA case logs that cover the time period of [their] request" containing the date the case was created, the case number, and the subject of the request. *Id*.

On March 11, 2015, Long called the CIA FOIA office and spoke with a staffer named Anthony, who confirmed that the FOIA office had the information Plaintiffs had requested stored in its "CADRE database." Pl.'s SOF ¶ 3, ECF No. 19-3, Long Decl. ¶ 9. He also confirmed that the CADRE database contained a separate record for each FOIA request received, and that each of these records contained the requested date fields (a) and (c)–(f), but that because the CIA had only a single centralized FOIA office, data field (b), relating to multiple offices, was inapplicable. *Id.* ¶ 11. Finally, Anthony stated that the CADRE database was used to prepare a large number of agency FOIA reports, and had been used to produce the digital files posted on the CIA's website as part of its annual and quarterly FOIA reports. *Id.* ¶ 12. The CIA does not dispute that this telephone conversation occurred or that Anthony told Long that "the CIA has certain information in its FOIA database." Def.'s Resp. to Pl.'s SOF ¶ 3, ECF No. 24. It asserts,

however, that these are not material facts because, even though "[t]he CIA has information like closure dates in its FOIA database," in order to "insert closure dates into a report . . . the CIA would have to create a new computer code, not merely run a search with existing computer codes." *Id.*

The next day, Plaintiffs declined to accept the case logs the CIA had offered in its previous letter because the logs did not contain closure dates for each FOIA request. ECF No. 16-2, Ex. C. The CIA responded on April 7, 2015, reiterating that its "record systems are not configured in a way that would allow [the CIA] to perform a search reasonably calculated to lead to responsive records without an unreasonable effort." *Id.* Ex. D.

Over the next 18 months, Plaintiffs submitted six additional FOIA requests, each identical to the first request in all material respects, except that they extended the cut-off date for the requested records.[1] *Id.* Exs. G, N, P, R, U, W (collectively hereinafter "Processing Data Requests"). The CIA declined to process each of these requests for the same reasons it refused to process Plaintiff's first FOIA request, i.e., because its systems were not configured in a way that would allow it to locate responsive records without unreasonable effort. *Id.* Exs. H, O, T, V, X (CIA letters declining to process Plaintiffs' remaining Processing Data Requests).

**B. Technical Data Requests**

On June 24, 2014, after submitting their first two Processing Data Requests, Plaintiffs submitted a third FOIA request (the "Technical Data Request") to the CIA. The 10-part request sought specific records related to various aspects of the CIA's FOIA database. ECF No. 16-2, Ex. K. On September 3, 2015, the CIA agreed to process Items 2, 3, 6, 8, 9(a), 9(c), and 10 of

---

[1] Because the Processing Data Requests differ only in the date range for which they seek the requested records, the court will not distinguish between the individual requests.

the Technical Data Request, and declined to process Items 1 (as it pertained to the CIA's current FOIA database) and 9(b) because they were extremely broad or vague, and the remainder of Item 1 and Items 4, 5, and 7 because FOIA does not require the government to perform research, answer questions, or create records in response to a FOIA request. *Id.* Ex. M.

### C. Procedural History

After exhausting their administrative remedies, Plaintiffs filed this action on October 20, 2015. ECF. No. 1. On August 31, 2017, after a partial stay of proceedings, the CIA completed processing the parts of the Technical Data Request it had agreed to process and released 349 pages in full, 6,276 pages in part, and withheld 3,857 pages in full. The CIA invoked FOIA Exemptions 1 (classified information), 3 (information protected from disclosure by other statutes), 4 (confidential commercial information), 5 (information protected by the deliberative process privilege), and 6 (information the release of which would constitute a clearly unwarranted invasion of privacy). Def.'s 2d SOF ¶¶ 3–9, ECF No. 36.

Currently before the court are: (1) the CIA's First Motion for Partial Summary Judgment, ECF No. 16, which concerns the Processing Data Requests and the portions of the Technical Data Request the CIA declined to process; (2) Plaintiffs' Cross-Motion for Partial Summary Judgment concerning the same items, ECF No. 19; and (3) the CIA's uncontested Second Motion for Partial Summary Judgment, ECF No. 36, which concerns the portions of the Technical Data Request the CIA agreed to process.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a).

In considering a motion for summary judgment, the court must treat the evidence of the nonmovant as true and draw all justifiable inferences in his favor. *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

## B.  FOIA

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster,* 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under clearly delineated statutory language." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a)–(b).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Summary judgment in FOIA cases may be based solely on information provided in an agency's supporting affidavits or

declarations if they are "relatively detailed and nonconclusory." *Safecard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). These declarations are "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.*

"To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)) (quotation marks omitted). By corollary, "[a] non-moving party's complete failure to come forward with evidence to demonstrate the existence of a genuine issue of material fact constitutes a reason for the grant of summary judgment under [Rule 56(e)]." *Smith v. U.S. Dep't of Justice*, 987 F. Supp. 2d 43, 47 (D.D.C. 2013).

III. ANALYSIS

A. Cross-Motions for Summary Judgment

The primary dispute in the parties' cross-motions for summary judgment is whether Plaintiffs' Processing Data Requests and parts of their Technical Data Request require the CIA to create records or answer questions. "FOIA imposes no duty on [an] agency to create records," *Forsham v. Harris*, 445 U.S. 169, 186 (1980) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975)), nor to "answer questions disguised as a FOIA request," *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985) (citing *Di Viao v. Kelley*, 571 F.2d 538, 542 (10th Cir. 1978)), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987). Here, the parties disagree as to the extent of the CIA's obligations under FOIA when the requested information is contained in an electronic database.

6

The 1996 Electronic FOIA Amendments ("E-FOIA Amendments") provide: "In responding . . . to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." Pub. L. 104-231, § 5, 110 Stat. 3048, 3049 (1996). If an agency stores information in an electronic database, "searching that database . . . [or] sorting [it] to make information intelligible does not involve the creation of a new record." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012). This is because, as Congress noted in enacting the E-FOIA Amendments, "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." H.R. Rep. No. 104-795, at 22 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 3448, 3465.

There is, however, a limit to what an agency must search for in an electronic database. *See Nat'l Sec. Counselors*, 898 F. Supp. at 271. While an agency must make reasonable efforts to produce the contents of its database in response to a FOIA request, it is not required to provide "a listing or index of a database's contents" if such listing or index does not already exist. *Id.* (citing *People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 15 (D.D.C. 2006)).

1. Processing Data Requests

Plaintiffs argue that searching for and extracting information maintained in an agency's database does not constitute the creation of a new record and is, in fact, required by the E-FOIA Amendments. Pl.'s Opp'n to Def.'s Mot. & Cross-Mot. for Partial Summ. J. ("Pl.'s Cross-Mot.") at 11, ECF No. 19. Specifically, they assert that the FOIA Improvement Act of 2016 requires agencies to make available the type of information they requested from the CIA, and,

7

therefore, "to the extent that 'new computer code' might be required to make such information available, the resulting 'burden' has been mandated by Congress." Pl.'s Reply in Supp. of Pl.'s Cross-Mot. ("Pl.'s Reply") at 2–3, ECF No. 26.

The CIA argues that it properly declined to process Plaintiffs' Processing Data Requests because they would require it to create new records, which is not required under FOIA. Supp. Shiner Decl. ¶ 24, ECF No. 16-1. The agency claims that it would either have to manually open thousands of files in the CIA's FOIA database to identify and extract the requested information or write new computer code to electronically compile the information. *Id.* ¶ 26. It also contends that the manual approach would be extremely labor-intensive, and that both approaches would require the agency to create a new record. *Id.* ¶ 26.

The CIA points out that Plaintiffs cite to no case or portion of the E-FOIA Amendments that requires an agency to write new computer code in response to a request for electronic information, and argues that such a policy could cripple agencies responding to FOIA requests. Def.'s Opp'n to Pl.'s Cross-Mot. & Reply in Supp. of Def.'s Mot. for Summ. J. ("Def.'s 1st Reply") at 9–10, ECF No. 24.

      *a. Creating New Records*

As an initial matter, the court is unconvinced by the CIA's argument that writing new computer code to locate responsive records in its database or compiling the resulting records constitute the creation of a new record. First, as Congress noted regarding the E-FOIA Amendments, "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." *See* H.R. Rep. 104-795, at 22. In other words, "if [an] agency already stores records in an electronic database, searching that database does not involve the creation of a new record." *Nat'l Sec. Counselors*,

898 F. Supp. 2d at 270.  Second, although Plaintiffs phrased their Processing Data Requests as seeking "a case-by-case listing," the information they seek is neither a listing nor an index of the database contents.  *See* ECF No. 16-2, Ex. A at 2 (emphasis added).  Instead, they seek certain data fields that the CIA concedes exist within the database.  *See id.* (requesting the following information about FOIA requests received by the CIA: assigned request tracking number, date of request, date request was received, track assigned, and date closed).  Thus, compiling these records does not constitute the creation of a new record.  *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270.

        b.   *Reasonable Search Efforts*

Having determined that Plaintiffs' Processing Data Requests would not require the CIA to create new records within the meaning of FOIA, the court finds that the CIA is obligated to "make reasonable efforts to search for the records" requested by Plaintiffs unless "such efforts would significantly interfere with the operation of the agency's automated information system." *See* E-FOIA Amendments § 5.

Because the CIA declined to process Plaintiffs' Processing Data Requests, there is no basis on which to find that the CIA made a reasonable effort to search for the requested records. *See, e.g.*, 2d Supp. Shiner Decl. ¶ 4 ("CIA declined to process the requests because . . . CIA would be required to write new code to electronically pull the information requested by Plaintiffs.").

Second, the affidavits provided by the CIA do not provide sufficient detail for the court to determine whether a search for responsive records would significantly interfere with its system operations.  The Second Supplemental Shiner Declaration submitted by the CIA states that "writing new code to pull the data and creat[ing] new, customized reports [ ] would be extremely

9

burdensome." 2d Supp. Shiner Decl. ¶ 5. Beyond this conclusory statement, the declaration outlines in a footnote the steps the CIA would have to take to locate and compile the requested records:

> [W]riting new computer code to create new, customized reports would first require CIA to amend the Statement of Work . . . included in the current contract which . . . does not allow for new development. Next . . . a contractor-developer would have to create and execute a Structured Query Language (SQL) query against the FOIA database. The developer would write a series of statements using SQL to gather the specified data from each case within the database. In order to create these statements, the developer would need to identify the tables within the database where this data is stored from among the many hundreds of tables contained therein. . . . [Then] he or she would create a SQL query referencing the appropriate tables to pull the requested information from each case record into a new, customized consolidated report, created solely for the purpose of this FOIA litigation.

*Id.* ¶ 5 n.2. However, the CIA provides no information about how long or the amount of resources it would take for the agency to complete these steps, or the extent to which it would interfere with agency operations. While the court affords agency affidavits substantial weight in FOIA litigation, it cannot rely solely on conclusory statements that a search process "would be extremely burdensome." Therefore, the CIA's First Motion for Partial Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment will be denied without prejudice as to the Processing Data Requests. *See McKinley v. Fed. Deposit Ins. Corp.*, 756 F. Supp. 2d 105, 116 (D.D.C. 2010) (denying summary judgment without prejudice where the record was inadequately developed); *cf. Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (vacating the district court's grant of summary judgment for an agency because the agency's affidavit was not sufficiently detailed). The CIA may re-file a motion for summary judgment with a sufficiently detailed and nonconclusory affidavit that explains why the process described in the Second Supplemental Shiner Declaration would significantly interfere with its system

operations. Plaintiffs are also granted leave to re-file a cross-motion for summary judgment.

### 2. Technical Data Request

#### a. *Creating New Records and Answering Questions: Items 1, 4, 5, and 7*

The CIA argues that Items 1, 4, 5, and 7 of the Technical Data Request seek answers to questions or would require the creation of new records. Def.'s 1st Mot. for Partial Summ. J. at 16. These items seek information about the software the CIA uses for its FOIA database management, the number of FOIA requests the CIA receives for which information is stored in a database, any database used to handle administrative appeals, and "the nature and scope of activities" for which the database management system is used. ECF No. 19-1, Ex. G ¶¶ 1, 4, 5, 7.

Plaintiffs respond that if the requested items can be located through a database query, the CIA is legally obligated to conduct the searches. Pl.'s Cross-Mot. at 16. They also argue that the CIA's search for responsive records was inadequate because the agency did not even attempt to conduct a search. Pl.'s Reply at 4–5.

The court agrees with the CIA's contention that these items seek answers to questions and therefore the CIA is under no obligation to respond. *See Hudgins*, 620 F. Supp. at 21 (explaining that FOIA does not require agencies to "answer questions disguised as a FOIA request"). Therefore, the court need not evaluate the adequacy of the agency's search in response to these items. For these reasons, the court will grant the CIA's First Motion for Partial Summary Judgment as to Items 1, 4, 5, and 7 of Plaintiffs' Technical Data Request, and will deny Plaintiffs' Cross-Motion for Partial Summary Judgment as to these items.

### b. *Unduly Burdensome Search: Item 9(b)*

Item 9(b) of Plaintiffs' Technical Data Request seeks "[a]ll other search, querying, and reporting capabilities of [the CIA's] FOIA [database management system], including . . . [a]ny listings, analyses, and reports, including both regular and ad hoc, that have been produced [by the CIA's FOIA database management system] over the last 18 months." ECF No. 19-1, Ex. G ¶ 9(b). The CIA argues that it need not search for records responsive to this request because to do so would be unduly burdensome.[2] Def.'s 1st Mot. for Partial Summ. J. at 20–21. It argues that it is "unable to reasonably identify or locate" responsive documents because such reports "are not stored by the Agency in any central location," and, further, that "users can self-generate reports at any time and . . . [the system] does not even track when a report is run." Supp. Shiner Decl. ¶ 28.

Plaintiffs counter that the CIA "has failed to explain in a detailed and non-conclusory manner why it is unable to conduct a search for responsive information."[3] Pl.'s Cross-Mot. at 17–19. They also argue that, even though the CIA does not store reports run from its FOIA database in any central location, it could reasonably search the centralized FOIA office or consult with IT support personnel to locate responsive materials.[4] Pl.'s Reply at 6.

---

[2] The CIA advances a similar argument as to Item 1 of Plaintiffs' Technical Data Request. However, because the court finds that the CIA is entitled to summary judgment as to Item 1, *see supra* ¶ III(A)(2)(a), it need not evaluate that argument.

[3] Plaintiffs also argue that the CIA only addressed "reports" generated by its FOIA database and did not discuss the existence of "listings" or "analyses" generated by the database. Pl.'s Cross-Mot. at 18. The CIA clarified in its response and in the Second Supplemental Shiner Declaration that it used the word "reports" to refer to reports, listings, and analyses. Def.'s 1st Reply at 13 (citing 2d Supp. Shiner Decl. ¶ 8).

[4] Plaintiffs raise a new argument in their reply brief: that the CIA's interpretation of Item 9(b) is too narrow. Pl.'s Reply at 5–6. The court does not address this argument because, "[a]s a general matter, it is improper for a party to raise new arguments in a reply brief because it

The court is unable to determine based on the record before it whether the search for responsive records would be unduly burdensome. Even taking as true the CIA's assertion that user-generated reports are not tracked, it is not clear from the Supplemental Shiner Declaration whether such user-generated reports are stored anywhere in the CIA's systems. The declaration also does not explain whether user-generated reports are the only type of reports generated by its FOIA database management system. To the extent that some responsive records do exist, the CIA is obligated to perform a reasonable search to locate and produce them.

For these reasons, Defendant's First Motion for Partial Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment will be denied without prejudice as to Technical Data Request Item 9(b). The CIA may re-file a motion for summary judgment with a sufficiently detailed and nonconclusory affidavit clarifying whether any responsive records exist and, if they do, what steps have been taken to locate and produce them. Plaintiffs are also granted leave to re-file a cross-motion for summary judgment.

### B. CIA's Second Motion for Summary Judgment

The CIA's Second Partial Motion for Summary Judgment concerns Items 2, 3, 6, 8, 9(a), 9(c), and 10 of Plaintiffs Technical Data Request. Def.'s 2d Mot. for Partial Summ. J., ECF No. 36. The CIA released 349 pages of responsive documents in full, 6,276 pages in part, and it withheld 3,857 pages in full. It invoked FOIA Exemptions 1 (classified information), 3 (information protected from disclosure by other statutes), 4 (confidential commercial information), 5 (information protected by the deliberative process privilege), and 6 (information

---

deprives the opposing party of an opportunity to respond to them, and courts may disregard any such arguments." *See Performance Contracting, Inc. v. Rapid Response Constr.*, 276 F.R.D. 422, 425 (D.D.C. 2010).

the release of which would constitute a clearly unwarranted invasion of privacy) as to the withheld records. Def.'s 2d SOF ¶¶ 3–9. Plaintiffs "do not contest the withholding of the information addressed in the agency's motion." Pl.'s Resp. to Def.'s 2d Mot. for Partial Summ. J. at 3, ECF No. 38.

Because Plaintiffs do not dispute any material facts and do not contest the motion, the court will grant the CIA's Second Motion for Partial Summary Judgment. *See Smith*, 987 F. Supp. 2d at 47 ("A non-moving party's complete failure to come forward with evidence to demonstrate the existence of a genuine issue of material fact constitutes a reason for the grant of summary judgment under [Rule 56(e)].").

## IV. CONCLUSION

For the foregoing reasons, (1) the CIA's First Motion for Partial Summary Judgment, ECF No. 16, will be DENIED without prejudice as to Plaintiffs' Processing Data Requests and Item 9(b) of Plaintiffs' Technical Data Request and GRANTED as to Items 1, 4, 5, and 7 of Plaintiffs' Technical Data Request; (2) Plaintiffs' Cross-Motion for Partial Summary Judgment, ECF No. 19, will be DENIED without prejudice; and (3) the CIA's Second Motion for Partial Summary Judgment, ECF No. 36, will be GRANTED.

Date: September 10, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge